UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RACHEL R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-851-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Rachel R. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Child's Insurance Benefits ("CIB") and her application for Supplemental Security Income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 6, 8. Plaintiff also filed a reply. *See* ECF No. 9. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 6) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 8) is **GRANTED**.

## BACKGROUND

On July 1, 2019, Plaintiff protectively filed an application for CIB and an application for SSI under Title XVI, alleging disability beginning July 10, 2019 (the disability onset date) due to: "(1) herniated disc in lower back radiating down hips & legs;  (2) bulging discs in neck radiating into upper extremities; (3) migraines; (4) irritable bowel syndrome; (5) allergies; and (6) facial

pain from accident." Transcript ("Tr.") 10, 220-21, 222-28, 243. The claims were denied initially on September 5, 2019, and upon reconsideration on December 26, 2019, after which Plaintiff requested a hearing. Tr. 10. On October 20, 2020, Administrative Law Judge Robert Gonzalez (the "ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Galena Duba-Weaver, an attorney. Tr. 10. V. Anthony (Tony) Melanson, an impartial vocational expert, also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on November 9, 2020, finding that Plaintiff was not disabled. Tr. 7-26. On May 27, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's November 9, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 10.

## II.    Statutory and Regulatory Standards for CIB and SSI

A claimant generally bears the burden of proving that she was disabled throughout the relevant time period. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982). To satisfy that burden, she must show that she was unable to engage in any substantial gainful activity due to some medically determinable physical or mental impairment or combination of impairments that lasted, or were expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A). Whether a claimant is disabled under the Act is to be decided by the Commissioner alone. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y. 2006).

A claimant can be entitled to CIB, on the record of another wage earner, who, in turn is entitled to old age or disability benefits, or who has died. 20 C.F.R. § 404.350. To be entitled to CIB, the claimant must show that she was either under age 18 when she applied for benefits on or 18 years or older and have a disability which began before she turned 22. 20 C.F.R. § 404.350. In this case, Plaintiff filed for CIB on the record of her mother, Melinda Ridinger. Tr. 74. Because Plaintiff alleged disability prior to her application date of July 3, 2019, the ALJ considered the entire relevant period from July 10, 2016, the alleged onset date, to November 9, 2020, the date of the ALJ's decision.

## III.   The Sequential Evaluation Process

To prove disability for either CIB or SSI purposes, the Commissioner applies a five-step sequential analysis to determine a claimant's disabled status. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (articulating the five-step analysis). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is

"severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

<u>**ADMINISTRATIVE LAW JUDGE'S FINDINGS**</u>

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 9, 2020 decision:

4

1. Born on October 28, 1996, the claimant had not attained age 22 as of July 10, 2016, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since July 10, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical spine and lumbar spine degenerative disc disease and disc herniation; migraines; morbid obesity; status post cerebral concussion; and cervical somatic dysfunction (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a)[2] except she must avoid concentrated exposure to dust, fumes, and noxious gases. She cannot work at unprotected heights. She cannot climb ladders, ropes, or scaffolds. She cannot have any jobs that require balancing. She can frequently handle, finger, and reach bilaterally. She can frequently flex, extend, and rotate the neck.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 28, 1996 and was 19 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 10, 2016, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

Tr. 10-26.

---

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Accordingly, the ALJ determined that, based on the application for child's insurance benefits protectively filed on July 3, 2019, the claimant is not disabled as defined in section 223(d) of the Social Security Act prior to October 27, 2018, the date she attained age 22. Tr. 26.

The ALJ also determined that based on the application for supplemental security benefits protectively filed on July 1, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. *Id*.

## ANALYSIS

Plaintiff asserts a single point of error challenging the ALJ's finding that the opinion of treating primary care physician ("PCP") Jeremy Riedesel, M.D. ("Dr. Riedesel"), was not persuasive. *See* ECF No. 6-1 at 9-14. Plaintiff asserts that Dr. Riedesel's opinion was both supported by his treatment notes and consistent with other evidence in the record, and the ALJ provided only "conclusory" explanations to support his finding to the contrary. *Id*. As a result, argues Plaintiff, the ALJ's RFC finding was not supported by substantial evidence. *Id*.

In response, the Commissioner argues that the ALJ's RFC finding was supported by substantial evidence, including multiple medical opinions, the treatment notes showing conservative treatment and largely benign findings, and Plaintiff's activities of daily living, which included performing household chores and driving. *See* ECF No. 8-1 at 8-24. Additionally, argues the Commissioner, Plaintiff's argument fails because the ALJ is tasked with weighing the evidence and reaching an RFC finding based on the record, not one that tracks a single opinion, such as the one from Dr. Riedesel. *See id*. at 8-9, 23.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ properly considered the entire record, and the ALJ's finding that Plaintiff could perform sedentary work with certain limitations was supported by substantial evidence, including the medical opinion evidence, treatment notes showing primarily conservative treatment and largely benign findings, and Plaintiff's activities of daily living, which included cooking, cleaning, laundry, shopping, and driving. Accordingly, the Court finds no error.

The record reflects that Plaintiff was involved in a motor vehicle accident on July 9, 2016, after which she sought treatment in the Emergency Department ("ED") at Brooks Memorial Hospital. Tr. 303-12. Plaintiff complained of right shoulder pain, neck pain, and back pain. Tr. 303. Positive physical examination results included right shoulder ecchymosis, diffuse tenderness of the neck, and tenderness to the entire back *Id*. at 304-05. However, right shoulder x-rays showed only negative results. *Id*. at 311.

On July 12, 2016, Plaintiff followed up with Natalie N. Pierce, RPA-C ("Ms. Pierce"), and Donald F. Brautigam, M.D. ("Dr. Brautigam"), at Westfield Family Physicians ("Westfield"). Tr. 331-34. Plaintiff complained of dizziness, intermittent blurred vision, some mild swelling of the right cheek, and history of lower back pain. Tr. 333. Plaintiff was assessed with post-concussion syndrome with forehead and facial contusions and mild post-concussion symptoms. Tr. 334. Plaintiff was prescribed ibuprofen, ice, heat, and exercises for her shoulder and upper arm pain. Tr. 333-34.

During a follow-up visit at Westfield on July 21, 2016, Plaintiff reported that, although she still had pain, was "feeling better;" ibuprofen was helping her pain; her post-concussion symptoms had improved; and she was no longer having issues with headaches. Tr. 344. Plaintiff also reported

that she only occasionally experienced dizziness, which did not last very long. *Id*. Plaintiff also reported that she was not experiencing any changes in vision, other than issues related to her glasses being damaged in the motor vehicle accident. *Id*. She also reported increased anxiety with driving. *Id*. Physical examination on that day demonstrated normal range of motion of the neck, no discomfort with moving, only minimal facial tenderness at the check, full range of motion of the right shoulder, and only mild discomfort of the right anterior shoulder. Tr. 345.

Shortly thereafter, on August 1, 2016, Plaintiff reported having issues with headache and continued neck pain. Tr. 347. She still had not gone to have her glasses fixed. *Id*. She also reported increased anxiety since the accident. *Id*. On examination, Plaintiff showed discomfort mostly on the right side of the neck; some tenderness to the anterior shoulder on palpation; and pain with full flexion of the neck. Tr. 348. However, she again exhibited only mild tenderness of the right forehead; "okay" range of motion of the neck, only mild discomfort with rotating the neck from side to side, "okay" range of motion of the shoulders; no pain on palpation of the mid-back; and intact sensation to the upper extremities. *Id*. Ms. Pierce believed that Plaintiff's headaches were related to neck strain and recommended physical therapy for her neck and shoulder and an eye exam, as well as ibuprofen as needed, ice and heat. *Id*. Subsequent cervical spine x-rays on August 3, 2016 showed no significant abnormalities. Tr. 314.

Plaintiff saw Ms. Pierce on August 22, 2016, complaining of daily neck pain and headaches. Tr. 350. On examination, there was neck discomfort with flexion and mild clavicle tenderness. Tr. 351. Plaintiff indicated that she had never started physical therapy treatment as recommended. Tr. 350.

Plaintiff attended an initial mental health assessment at Deerfield Behavioral Health Center on September 7, 2016.  Tr. 316-23. However, the record indicates that she was discharged on November 8, 2016, after attending only one therapy session. Tr. 324.

On October 19, 2016, Plaintiff had a follow-up visit with Ms. Pierce and similarly reported neck pain and headaches, but she still had not started physical therapy. Tr. 353. She reported that her anxiety had improved despite going to a counselor only once, and she was now driving again. Tr. 356. On examination, neck range of motion was normal, but discomfort was present. Tr. 357. There was mild spasm along the trapezius with posterior tenderness. *Id*.

On May 19, 2017, Plaintiff was evaluated by Joshua Radecki, PA-C ("Mr. Radecki"), at Family Health Medical Services ("FHMS"). Tr. 1004-06. The treatment note indicates that Plaintiff had hip pain due to a herniated disc in the lumbar spine that was diagnosed before the accident, but the pain in her lower back and hips had worsened. Tr. 1004. Mr. Radecki noted that Plaintiff "appear[ed] morbidly obese." *Id*. Examination revealed tenderness to palpation over the posterior neck and upper back to light touch. Tr. 1005. Plaintiff was started on meloxicam. *Id*.

Plaintiff returned for a follow-up visit with Mr. Radecki on September 28, 2017. Tr. 1007-09. She had not taken the meloxicam that had been prescribed at the last visit. Tr. 1007. She stated she was "just dealing with the pain." *Id*. Examination revealed tenderness to palpation over the lumbar spine and midline over the left hip. Tr. 1008. Mr. Radecki explained that they could "not move on to different steps until anti [-]inflammatory [medication] has been tried." *Id*. Plaintiff agreed to start meloxicam and call in two weeks if her pain did not improve. *Id*.

Plaintiff was seen by Dr. Riedesel at FHMS on November 2, 2017, complaining of swelling over the right side of the face and continued neck pain. Tr. 1010-12. On examination, there was tenderness on palpation over the zygomatic arch, as well as tenderness in the neck over the right lateral surface and mildly limited range of motion. Tr. 1011. Dr. Riedesel ordered an MRI of the cervical spine and complete x-rays of the facial bones and prescribed amitriptyline. Tr. 1011-12. A cervical MRI performed on May 3, 2018, revealed left paracentral C4-5 disc protrusion causing a leftward anterior impression on the thecal sac. Tr. 326.

On June 19, 2018, Plaintiff followed up with Dr. Riedesel to review her MRI results. Tr. 1013. She had continued worsening facial, neck, back, and hip pain. Tr. 1013. Examination was unchanged. Tr. 1014. Dr. Riedesel indicated that it was unclear what caused the facial pain. Tr. 1014-15. Plaintiff had not yet started amitriptyline for her headaches due to fear of possible side effects. Tr. 1015. Dr. Riedesel diagnosed cervical displacement at C4-C5 level and referred Plaintiff to neurosurgeon Jeffrey Lewis, M.D. ("Dr. Lewis"), for a surgical evaluation. *Id*.

Plaintiff saw Dr. Lewis on July 20, 2018. Tr. 336-37, 364-65. She reported shooting neck pain, arm weakness, face pain, finger pain, shoulder pain, and headaches. Tr. 364. Despite these complaints, Plaintiff reported to Dr. Lewis that she had not participated in any physical therapy or chiropractic treatment. *Id*. Plaintiff reported her height as 5'9" and her weight as 294 pounds. *Id*. On examination, Plaintiff showed only mildly restricted range of motion of the cervical spine on flexion and extension, with otherwise completely normal physical examination results, including normal gait, normal mentation, normal muscle tone and strength of the head and neck, and no dislocation, subluxation, or laxity of the cervical spine. Tr.336-37. Plaintiff also had normal range of motion of the upper extremities, normal muscle tone and strength of the upper extremities, normal upper extremity motor and sensory function, normal upper extremity reflexes, and no dislocation, subluxation, or laxity of the upper extremities. *Id*. Similarly, Plaintiff exhibited normal lumbar spine range of motion, normal range of motion of the lower extremities, normal muscle strength and tone of the lower extremities, normal lower extremity motor and sensory function, normal lower extremity reflexes, and no dislocation, subluxation, or laxity of the lower extremities. Tr. 337.

Dr. Lewis noted that an MRI of Plaintiff's cervical spine had showed a small central disc herniation at the C4-C5 level, with thecal sac compression. Tr. 336. He recommended a trial of cervical physical therapy, but if this was not successful, discectomy and placement of an artificial

disc at C4-C5 was an option. Tr. 365. Plaintiff was to return in two months after trying physical therapy. *Id*.

On September 26, 2018, Plaintiff attended an independent neurosurgical examination with Richard Kanoff, D.O. ("Dr. Kanoff"), for Worker's Compensation purposes. Tr. 729. She reported headaches, neck pain, and low back pain. Tr. 729-30. She reported ten-minute sitting tolerance and five-minute walking tolerance. Tr. 730. On examination, there was mild right eye lag in cranial nerves. Tr. 731. There was low back pain on straight leg raise at 80 degrees. Tr. 732. There was mild lumbar tenderness to palpation; cervical range of motion was decreased on flexion, extension, and bilateral side bending; and there was cervical midline tenderness and bilateral paraspinal tenderness. Tr. 733.

In terms of Plaintiff's need for further treatment, Dr. Kanoff noted that Plaintiff had not received any neurosurgical treatment other than one evaluation in July 2018 which recommended physical therapy; however, at that time Plaintiff had not yet attended physical therapy. *Id*. Dr. Kanoff accordingly opined that until Plaintiff completed a course of conventional physical therapy, further treatment recommendations, such as injections or surgery, would be premature. *Id*.  In terms of Plaintiff's ability to work, Dr. Kanoff opined that while Plaintiff had been able to work light duty prior to the accident, she was now temporarily disabled from vocational activities due to her new cervical and cognitive symptoms. Tr. 734.

Plaintiff had a follow-up visit at FHMS on December 11, 2018, requesting to restart amitriptyline. Tr. 360-63. She complained of headaches with associated photophobia, and her neck back, and shoulder pain remained. Tr. 360. Plaintiff reported she had seen neurosurgeon Dr. Lewis who recommended surgery, but she was "terrified of having neck surgery" and requested a second opinion. *Id*. On examination, Plaintiff walked with a normal gait; she had full range of motion in the neck though with discomfort; and tenderness to palpation in the cervical paraspinal area,

trapezius, and midline spine. Tr. 361. Amitriptyline and propranolol were prescribed for her headaches; and Plaintiff was referred for a neurosurgical second opinion. Tr. 362.

On December 26, 2018, Dr. Kanoff performed an updated examination that was largely unchanged. Tr. 417-22. He provided the same opinion. Tr. 734.

Plaintiff followed up at FHMS on February 14, 2019, with headaches and low back pain. Tr. 381. Her headaches had worsened since starting amitriptyline. Tr. 381. She had not taken propranolol due to fear of side effects. Tr. 381. Dr. Riedesel noted that Plaintiff 's personal injury attorney suggested she apply for disability and advised her to discuss her "ability to perform working duties" with her doctor. *Id*. Plaintiff reported she could not lift her arms above her head. *Id*. On examination, Plaintiff had full range of motion in her extremities, but there was tenderness to palpation over the lumbar spine and over the left hip. Tr. 382. Dr. Riedesel replaced amitriptyline with Fluticasone propionate (Topiramate). Tr. 383.

On March 12, 2019, Plaintiff attended an initial physical therapy examination at Hertel and Brown Physical Therapy. Tr. 413. On examination, her cervical range of motion was restricted, and strength was reduced. *Id*. Goals included increasing strength and range of motion, and she was recommended to attend two therapy sessions per week for four weeks. Tr. 413-14.

On March 28, 2019, Plaintiff underwent an additional neurosurgical consultation with Ryan DenHaese, M.D. ("Dr. DenHaese"). Tr. 373-74, 375-76. During that examination, Plaintiff reported symptoms including neck pain, headaches, and bilateral tingling of the hands, consistent with radiculopathy. Tr. 375. She also complained of headaches, weakness, loss of energy, blurred vision, and ringing in the ears. *Id*. On examination, Plaintiff ambulated unassisted. Tr. 376 She had full (5/5) strength in her upper extremities, intact sensation, normal reflexes, and no Hoffman's sign or clonus. *Id*. Range of motion of the cervical spine was maintained but limited in the extremes

of flexion and extension, and there was paraspinal muscle tenderness diffusely. *Id*. Dr. DenHaese recommended continuing physical therapy and a neurological consult. Tr. 373.

Plaintiff followed up with Dr. Riedesel on May 10, 2019, reporting worsening migraines. Tr. 384. She reported she had been attending physical therapy for about a month, and she noticed improvement in being able to turn her head to the left, but she was unable to turn to turn her head to the right. Tr. 384. On examination, there was tenderness to palpation in the right posterior surface of the neck, and right trapezius; moderately limited range of motion on forward flexion, backward extension, and bilateral rotation; positive Spurling's test with tingling and radiating down the contralateral shoulder; and limited range of motion shoulders bilaterally with pain on the right. Tr. 385. Dr. Riedesel noted some mild improvement in range of motion, but no change in pain, frequency, or severity of headaches. *Id*. Because Plaintiff had an allergic reaction to Topiramate. Dr. Riedesel started a trial of Verapamil. *Id*.

Another neurological examination with Dr. Kanoff on June 5, 2019, was largely unchanged. Tr. 721-24. Dr. Kanoff recommended continued treatment, and opined that Plaintiff was "totally disabled form vocational activities." Tr. 724.

On June 20, 2019, Dr. Riedesel completed a Physical Medical Source Statement. Tr. 389-92. Diagnoses were other cervical disc displacement at C4-5 and tension headaches, and her prognosis was "unlikely to improve." Tr. 389. He opined that Plaintiff could only walk one city block. Tr. 390. He further opined that she could sit only less than two hours, and stand/walk only less than two hours, in an eight-hour workday. Tr. 390. He also opined that Plaintiff would need to change positions at will, and she would require unscheduled breaks roughly once per hour for five to 10 minutes. Tr. 390. She could rarely lift less than 10 pounds and never more and never twist, stoop/bend, crouch, squat, climb stairs, or climb ladders. Tr. 391. She could use her hands and fingers for grasping, turning, twisting, and fine manipulation 25 percent of the time and use

her arms for reaching in the front five percent of the time, but she was unable to reach overhead. Tr. 391. Finally, Dr. Riedesel opined that Plaintiff would likely be off task 25 percent of the time or more; she was incapable of low stress work; and due to good and bad days, she would likely miss more than four workdays per month. Tr. 392.

Plaintiff was discharged from physical therapy on June 27, 2019, after attending 26 visits. Tr. 430. She reported her neck pain alternated between both upper extremities, but it had decreased in intensity, and driving was easier. Tr. 430. She felt that overall, she had plateaued in her progress. *Id*. On examination, cervical range of motion was largely unchanged. Tr. 431. Assessment noted minimal progress, with small decrease in pain, some improvement in strength and range of motion, and she was able to look over her shoulder with driving with improved ease. *Id*.

Plaintiff followed up with Dr. Riedesel on August 13, 2019. Tr. 804-06. She reported that her lower back and hip pain had worsened and neck pain, as well as headaches. remained. Tr. 804. She also reported increased memory loss and issues with short-term recall. *Id*. She was not currently taking any medications; she had tried Verapamil, but it did not improve her headaches. *Id*. Plaintiff had obtained a neurosurgical second opinion from Dr. DenHaese, who agreed that surgery was the only option to improve her neck, but Dr. DenHaese felt that Plaintiff was too young for surgery. *Id*. On examination, there was neck tenderness in the right posterior surface and trapezius, with moderately limited range of motion. Tr. 805. Spurling's test was positive bilaterally, and shoulder range of motion was limited on the right with pain. *Id*. Dr. Riedesel increased Verapamil and ordered a brain MRI. Tr. 805. On August 27, 2019, she was unchanged, with continued memory loss and short-term recall issues. Tr. 807-08. The request for an MRI had been denied until further testing to rule out other causes was performed. Tr. 807.

On August 23, 2019, Plaintiff underwent an internal medicine consultative examination with Russell Lee, M.D. ("Dr. Lee"). Tr. 765-69. Plaintiff reported a history of neck pain since her

2016 automobile accident and lower back pain dating back to a fall at school in 2015. Tr. 365. She also reported "tension" headaches and memory loss. Tr. 765-66. Plaintiff reported that she was generally able to cook seven days per week, clean three days per week, launder twice per week, shop once per week, shower daily, and dress herself daily. Tr. 766.

On examination, Plaintiff showed positive straight leg raise testing bilaterally, reduced range of motion of the cervical spine, reduced range of motion of the lumbar spine, and reduced flexion of the knees. Tr. 767-68. Otherwise, her examination results were normal, including normal gait, normal squat, normal stance, normal vision, ability to walk on heels and toes without difficulties, use of no assistive devices, and ability to change for the exam, rise from the chair, and get on and off the exam table. Tr. 767. Similarly, Plaintiff had full range of motion of the shoulders, elbows, wrists, and ankles; normal neurological examination results, including normal deep tendon reflexes, no sensory deficits, and full strength in the upper and lower extremities; full grip strength bilaterally; intact hand and finger dexterity; and no cyanosis, clubbing, edema, or muscle atrophy of the extremities. Tr. 768. Cervical spine x-rays further revealed no evidence of acute fracture or subluxation. Tr. 769-70. Dr. Lee opined that Plaintiff should avoid smoke, dust, and known respiratory irritants and assessed a moderate limitation in activities requiring "walking great distances and prolonged sitting." Tr. 769.

On November 1, 2019, Plaintiff underwent a psychiatric consultative examination with Todd Deneen, Psy.D. ("Dr. Deneen"). Tr. 1036-39. On examination, Dr. Deneen noted anxious mood and affect; mildly impaired attention and concentration "due to anxiety in the evaluation;" below average intellectual functioning; and Plaintiff's general fund of information was "appropriate to experience." Tr. 1037. Dr. Deneen opined that Plaintiff had only a mild limitation in sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating emotions, controlling behavior, and maintaining

well-being, and no limitations in any other areas. Tr. 1038. He also found that Plaintiff's psychiatric problems did not appear significant enough to interfere with her ability to function daily. *Id*.

On November 14, 2019, Plaintiff had a follow-up visit with Dr. Riedesel. Tr. 1040-44. She reported increased anxiety and sleep difficulty. Tr. 1040. On examination, Dr. Riedesel noted diminished strength in the spine with pain bilaterally. Tr. 1042. Verapamil was discontinued and Tizanidine was started. Tr. 1043.

On February 25, 2020, Plaintiff reported that Tizandine was not helpful and "only made [her] tired." Tr. 1086. She complained of increased shooting pains to her arms and wrists, and unchanged headaches. Tr. 1086. Neck, back, and hip pain remained as well. Tr. 1086. She also reported increased numbness and weakness with difficulty gripping. *Id*. On examination, cervical paraspinal tenderness and reduced neck range of motion remained. Tr. 1087. Spurling's test was positive with tingling and radiating down the right shoulder. *Id*. Shoulder strength was reduced (4/5) with pain bilaterally and limited range of motion, and grip strength was reduced (4/5). *Id*. Dr. Riedesel ordered an MRI and prescribed lidocaine patches for headaches. Tr. 1087.

During a video visit with FHMS on June 2, 2020, Plaintiff's complaints were unchanged. Tr. 1089-90. She reported daily headaches, but she stated they did not last as long and were less frequent. Tr. 1090. She was not using the lidocaine patches that had been prescribed at her last visit. Tr. 1089.

As noted above, Plaintiff challenges the ALJ's consideration of the opinion evidence, as well as the overall RFC finding. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R.

§ 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole);

*Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on July 1, 2019, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also*

42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC assessment. *See* 20 C.F.R. §§ 404.1527, 416.927. Here, in reaching the RFC finding, the ALJ considered the multiple medical opinions, some of which were more restrictive than others, and he properly found more persuasive those opinions that were consistent with the record, including Plaintiff's treatment notes and normal activities of daily living. Tr. 17-24.

Plaintiff argues that the ALJ should have found Dr. Riedesel's June 2019 opinion persuasive. *See* ECF No. 6-1 at 13. Dr. Riedesel opined, *inter alia*, that Plaintiff could do less than sedentary work; would have difficulty with reaching; would need to be off-task 25 percent or more of the workday; and would need to be absent more than four days per month. Tr. 389-92. Contrary to Plaintiff's assertions, however, the ALJ thoroughly evaluated Dr. Riedesel's opinion and reasonably explained that he found Dr. Riedesel's opinion unpersuasive because it was not supported by his own treatment notes and not consistent with other evidence in the record. Tr. 22, 389-92. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also* 20 C.F.R. §§ 404.1520c(c)(1),

416.920c(c)(1) (supportability factor) 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency factor).

   As the ALJ explained, Dr. Riedesel's own treatment notes (and those of his colleagues at FHMS) confirmed that they provided only conservative care to Plaintiff, mostly in the form of routine medication management. Tr. 22, 385, 409, 797, 1042, 1080-81. The ALJ also explained (referring to his discussion earlier in the decision) that despite some positive findings, Dr. Riedesel's findings overall showed that Plaintiff continued to demonstrate generally normal physical examination results, such as normal gait, full (5/5) or nearly full (4/5) motor strength, and full or nearly full range of motion. Tr. 22, 378, 382, 385, 1005, 1008, 1011, 1017.

   In challenging the ALJ's evaluation of the supportability factor, Plaintiff accuses the ALJ of downplaying Dr. Riedesel's positive findings, such as reduced range of motion of the back and positive Spurling's test. *See* ECF No. 6-1 at 18. Plaintiff also complains that the ALJ did not sufficiently explain why these positive findings did not provide support for Dr. Riedesel's opinion. However, the ALJ acknowledged that despite some positive findings, Plaintiff had "a number of good physical examination results" during her course of treatment with Dr. Riedesel, including that Plaintiff still exhibited normal gait with walking, normal and symmetric motor strength of the upper and lower extremities, and intact cranial nerves (Tr. 378, 382) and sometimes showed full range of motion of the neck, despite exhibiting mildly and moderately limited neck range of motion at other times (Tr. 378, 382, 385, 1005, 1008, 1014, 1017, 1021). Tr. 18. The ALJ also noted that facial bone x-rays taken on May 21, 2018 revealed no evidence of fracture. Tr. 18, 330, 1085.

   Further, noted the ALJ, Plaintiff required no surgical intervention and experienced improvement in her signs and symptoms with medication, physical therapy and aquatic therapy treatment. Tr. 18, 22. As the ALJ further noted, the record contained absolutely no evidence justifying Dr. Riedesel's extensive off-task limitation, absenteeism, unscheduled breaks, or

inability to perform even low stress work. Tr. 22. The ALJ observed that Plaintiff did not experience any major exacerbations of her impairments, including no evidence of any repeat emergency department visits or extended inpatient hospitalization treatment, and did not require any ongoing mental health treatment. Based on the foregoing, the ALJ reasonably restricted Plaintiff to sedentary work, the least physically demanding of the work categories. Tr. 15-16.

Plaintiff also claims that the opinion of consultative examiner Dr. Lee shows that she could not do sedentary work. *See* ECF No. 6-1 at 20. As noted above, Dr. Lee opined that Plaintiff had a moderate limitation in activities requiring walking great distances and doing prolonged sitting; and needed to avoid smoke, dust, and known respiratory irritants. Tr. 769. Dr. Lee did not assess any other limitations, such as a need for unscheduled breaks, to be off task or absent from work, or a reaching limitation. *Id*. The ALJ explained that he accepted those portions of Dr. Lee's opinion that were supported by the doctor's own findings and consistent with the record as a whole (*i.e.*, the standing and environmental limitations), but he did not accept the limitations that were not supported by, and consistent with, the evidence (the sitting limitation). Tr. 21. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (explaining that in evaluating medical opinions, the more a medical source presents relevant objective evidence and supporting explanations to support his or her opinion, the more persuasive that opinion will be found); 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be found).

The ALJ also acknowledged that Dr. Lee noted some positive findings on examination, such as Plaintiff's limited range of motion of the cervical and lumbar spine, hips, and knees; and positive straight leg raising, but the ALJ noted that Dr. Lee's other findings were normal. Tr. 20, 767-68. Specifically, Dr. Lee found that Plaintiff had a normal gait and stance, an intact ability to walk on heels and toes, and an ability to squat fully. Tr. 21, 767. The ALJ also noted that Plaintiff

was able to rise from a chair without difficulty; needed no help changing for the examination or getting on and off the examination table; and had normal deep tendon reflexes, intact sensation, and full (5/5) motor strength. Tr. 21, 767-68. These findings were generally consistent with those of Plaintiff's treating providers, including normal gait, normal and symmetric motor strength, intact cranial nerves, intact sensation, and intact reflexes, as discussed above. Tr. 18, 304, 332, 336-37, 350, 354, 357, 361, 365, 374, 378, 388, 399, 404, 419-21, 424, 794, 970, 1042, 1046.

Based on Plaintiff's reduced range of motion of the back, hips, and knees, the ALJ reasonably restricted Plaintiff from doing work that required significant walking or standing, such as heavy, medium, or even light work; but based on the other normal findings, the ALJ reasonably determined that Plaintiff was able to perform sedentary work, the least physically demanding of the work categories. Tr. 16. Given Plaintiff's history of asthma since childhood, the ALJ also reasonably accepted Dr. Lee's opinion that Plaintiff should avoid respiratory irritants. Tr. 16, 766, 769.

The ALJ also explained that he disagreed with Dr. Lee's opinion that Plaintiff had a moderate limitation in prolonged sitting, because the record, which included Dr. Lee's mostly normal findings, did not show that Plaintiff had a significant limitation in sitting. Tr. 22, 304, 332, 336-37, 350, 354, 357, 361, 365, 374, 378, 388, 399, 404, 419-21, 424, 767-68, 794, 970, 1042, 1046. As the ALJ further explained, Dr. Lee's opinion that Plaintiff had a moderate limitation in prolonged sitting was "vague since the doctor failed to adequately define what constituted moderate or prolonged limitations, including failing to define how many hours the claimant could sit or walk during an eight-hour workday." Tr. 22. Thus, contrary to Plaintiff's arguments (*see* ECF No. 6-1 at 20), the ALJ reasonably explained his rationale, based on the evidence in the record, for not adopting the sitting limitation assessed by Dr. Lee. Tr. 22.

In any event, even if the ALJ had adopted Dr. Lee's opinion of a moderate limitation in sitting, this would not be inconsistent with sedentary work. *See Murray v. Colvin*, No. 15-CV-6384P, 2016 WL 5335545, at *10 (W.D.N.Y. Sept. 23, 2016) (rejecting argument that a moderate limitation in prolonged sitting precludes sedentary work); *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756 at * 15 (W.D.N.Y. Feb. 25, 2015) (moderate limitation in sitting, standing, and walking not inconsistent with RFC that claimant could sit, stand, and walk for six hours a day respectively and supports a finding of light or medium work); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." ). Thus, Dr. Lee's opinion that Plaintiff had a moderate limitation in prolonged sitting is not at odds with sedentary work. Accordingly, Plaintiff has failed to meet her burden to show that she was more restricted than the ALJ had found. *Parker v. Berryhill*, No. 17-cv-252-FPG, 2018 WL 4111191, at *4 (W.D.N.Y. Aug. 29, 2018) (holding that plaintiff bears the burden of showing that the RFC is more limited than that found by the ALJ).

Plaintiff also argues that Dr. Riedesel's opinion should have been found consistent with the opinions of Dr. Kanoff, who examined plaintiff for Worker's Compensation purposes and found her either "temporarily totally disabled" (Tr. 422, 938) or "totally disabled" (Tr. 976). *See* ECF No. 6-1 at 24. Plaintiff's argument is meritless. First, Dr. Kanoff's statement that Plaintiff was disabled is an opinion on an issue reserved to the Commissioner, and as such, is inherently neither valuable nor persuasive, and does not even have to be discussed in the ALJ's decision. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (stating some categories of evidence are inherently neither valuable nor persuasive and the ALJ "will not will not provide any analysis" about how such evidence was considered); see also 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i) (including

24

statements that a claimant is disabled in this category of evidence, as they go to an issue reserved to the Commissioner). Although the ALJ was not required to discuss Dr. Kanoff's statements, he did so, nevertheless, explaining that he did not find Dr. Kanoff's statements persuasive because they were vague and conclusory and did not adequately identify Plaintiff's specific functional limitations. Tr. 23.

As explained above, RFC is an administrative finding, not a medical one. The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, the ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record, not one that tracks any particular opinion. *See Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (explaining that "an ALJ's conclusion need not 'perfectly correspond with any of the opinions of medical sources cited in his decision,' because the ALJ is 'entitled to weigh all of the evidence available to make a residual functional capacity finding that [is] consistent with the record as a whole'") (quoting *Matta*, 508 F. App'x at 56). Furthermore, the ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Thus, opinion evidence is only one type of evidence an ALJ is required to consider. Here, the ALJ also relied on Plaintiff's treatment notes, as he is permitted to do. *See Monroe*, 676 F. App'x. at 9 (holding that the ALJ could rely on treatment notes to formulate the RFC assessment, and rejecting the argument that a medical opinion was required). Plaintiff complains that the ALJ relied on "improper picking and choosing" the record evidence to support his conclusions. *See*

ECF No. 6-1 at 15. However, as explained above, the ALJ properly discussed the positive findings in Plaintiff's treatment records, as well as the normal findings. Tr. 16-18. *See Jillian R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1735-DB, 2022 WL 13697992, at *10 (W.D.N.Y. Oct. 21, 2022) (explaining that the fact that the record contains some positive findings or opinions does not undermine the ALJ's RFC finding where there is also evidence to support the ALJ's conclusion).

For example, the ALJ acknowledged that Plaintiff reported pain in her neck, back, and right shoulder after her July 2019 motor vehicle accident and, at times, complained of dizziness, facial pain, and headaches. Tr. 16-17, 303-05, 309, 331, 338, 345, 347. The ALJ also noted that the record contained positive findings, such as discomfort with range of motion of the neck, upper back, and left hip, and reduced shoulder strength, and positive Spurling's test. Tr. 17-18, 386, 401, 411, 420, 1005, 1008, 1014, 1024. The ALJ also discussed a May 2018 cervical spine MRI showing evidence of left paracentral C4-C5 disc protrusion, which caused a leftward anterior impression on the thecal sac. Tr. 18, 326.

On the other hand, the ALJ noted that other findings were normal. Tr. 18. For example, the ALJ discussed clinical findings showing that Plaintiff usually had full or only mildly limited range of motion of the neck, normal range of motion of the lumbar spine, and normal range of motion of the extremities. Tr. 18, 305-06, 332, 348, 351, 354, 365, 378, 388, 408, 411, 796, 1046. Plaintiff also had full or "okay" range of motion of her right shoulder (Tr. 345, 348); no upper extremity weakness (Tr. 350); and normal gait, normal and symmetric motor strength, intact cranial nerves, intact sensation, and intact reflexes (Tr. 304, 332, 336-37, 351, 354, 357, 361, 365, 374, 378, 388, 399, 404, 419-21, 424, 794, 970, 1042, 1046). Tr. 17-18. Despite some complaints of headaches and memory problems (Tr. 804), Plaintiff's mentation and memory were normal on examination. (Tr. 322, 336, 768, 970); her cognition did not appear impaired (Tr. 846, 851, 853, 855); and she denied associated neurological or constitutional symptoms (Tr. 1004, 1007, 1010, 1013-14, 1046,

1087). Tr. 19. The ALJ also noted diagnostic studies, including facial bone x-rays in May 2018
revealing no evidence of fracture (Tr. 330, 1085) and a July 2016 x-ray of the right shoulder that
was negative (Tr. 779). Tr. 17-18.

In addition to considering Plaintiff's treatment notes and other objective evidence showing
largely normal findings, the ALJ considered Plaintiff's treatment modalities. *See* 20 C.F.R. §
404.1529(c)(3)(iv)-(v) (adjudicator properly considers the treatment modalities utilized, and the
effectiveness of treatment to relieve pain and other symptoms). Tr. 23. As the ALJ noted, Plaintiff
received only conservative treatment in the form of medication, physical therapy, and aquatic
therapy, and there was no evidence that Plaintiff required surgeries, hospitalizations, emergency
room treatment, referrals to a pain clinic, or injections, demonstrating that her symptoms were
well-managed with conservative care. Tr. 18, 22, 337, 348, 351, 407, 430-49, 457-58. *See Penfield
v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (a claimant receiving only conservative treatment
is evidence that can weigh against allegations of disabling symptoms); *see also Netter v. Astrue*,
272 F. App'x 54, 56 (2d Cir. 2008); *Shaffer v. Colvin*, No. 1:14-CV-00745, 2015 WL 9307349, at
*5 (W.D.N.Y. Dec. 21, 2015) (finding that the ALJ properly discredited the claimant's allegations
because her treatment was routine and conservative, consisting of medication management and
physical therapy).

Relatedly, as the ALJ highlighted, Plaintiff testified at the hearing that her treatment had
been helpful to her; physical therapy helped her musculoskeletal pain; and her headache
medication usually "completely" alleviated her headaches, although she still had migraines on
occasion. Tr. 18, 63. Plaintiff's statements to her practitioners similarly confirmed that she
improved with both time and treatment. Tr. 332, 345, 347, 350, 410, 502, 509, 515, 517, 564, 665,
1016). *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (finding that
improvement with treatment was properly considered in concluding claimant not disabled); *see*

27

*also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function).

Notably, despite admitting that treatment was helping her, Plaintiff repeatedly declined to comply with recommended treatment, as the ALJ also noted. Tr. 17. She repeatedly reported that she was not taking prescribed medications or had discontinued medication on her own. Tr. 377, 795, 798, 1073, 1079, 1082, 1086, 1089. She also delayed starting physical therapy until March 2019, even though it had been recommended to her since at least July 2018. Tr. 17, 19, 336, 347, 348, 351, 354, 356. Plaintiff's repeated failures to follow treatment recommendations further undermined her allegation of disability. *See* SSR 16-3p, 2017 WL 5180304 *9 (explaining that if the individual fails to follow prescribed treatment that might improve symptoms, the ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence in the record); *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (noting that Dumas was unwilling to help himself by following treatment recommendations and remarking, "[o]f course, a remediable impairment is not disabling").

The ALJ also properly considered Plaintiff's reported activities to support the RFC assessment for sedentary work. Tr. 21, 24. *See* 20 C.F.R. § 404.1529(c)(3)(i); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (Citing 20 C.F.R. § 416.929(c)(3)(i)). The ALJ acknowledged that Plaintiff testified at the hearing that she had difficulty with her daily activities. Tr. 16, 66. However, as the ALJ correctly noted, Plaintiff told Dr. Lee that she was able to cook, clean, do laundry, shop, and perform her personal grooming (Tr. 766), and she told Dr. Deneen that she was able to shop, wash laundry, clean, cook, dress, and shower (Tr. 1038). Tr. 21, 24. Plaintiff was also able to drive, which indicates that her neck range

of motion improved sufficiently for her to be able to drive.  Tr. 283, 358, 1038. *Voght v. Saul*, No. 18 Civ. 1435-MJR, 2020 WL 3410837, at *5 (W.D.N.Y. Jun 19, 2020) (holding that the ALJ could rely on the claimant's statements about his daily activities in support of the RFC finding); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that Plaintiff's activities of daily living was an important indicator of her true level of physical functioning); *see also Ortiz v. Saul*, No. 1:19-cv-00942 (ALC), 2020 WL 1150213, at *1 (S.D.N.Y. Mar. 10, 2020) ("Plaintiff's ability to perform a range of light household chores, including cooking, shopping, cleaning, and laundry . . . support[s] a light work RFC finding."). In short, Plaintiff's activities of daily living, along with her treatment notes showing primarily conservative treatment, provide support for the ALJ's RFC finding.

As previously noted, Plaintiff bears the ultimate burden of proving that she was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the treatment records, the opinion evidence, Plaintiff's daily activities, and her relatively conservative treatment, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

When "there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is

"a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE